UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| MATTHEW CURITTI et al., ) <br> ) <br> Plaintiffs, ) <br> ) <br> vs. ) <br> ) <br> JPMORGAN CHASE BANK, N.A. et al., ) <br> ) <br> Defendants. ) <br> ) | 3:12-cv-00442-RCJ-WGC <br><br> **ORDER** |

This is a quiet title action not involving a foreclosure. Pending before the Court is Plaintiffs' Motion for Default Judgment (ECF No. 96). For the reasons given herein, the Court grants the motion.

**I.      FACTS AND PROCEDURAL HISTORY**

On or about October 11, 2005, non-parties Jason S, and Angelina A. Peterson gave Washington Mutual Bank, F.A. ("WaMu") a $234,000 promissory note, and a deed of trust (the "WaMu DOT") against real property at 1711 Branding Ct., Fernley, NV 89406 (the "Property") to secure it. (*See* Compl. ¶¶ 6–7, July 13, 2012, ECF No. 1-1, at 2). California Reconveyance Co. ("CRC") was the trustee. (*Id.* ¶ 6). Trustee Corps was later substituted as trustee under the WaMu DOT. (*Id.* ¶ 8). On or about March 18, 2011, the Petersons gave Golden Hills Trust a deed of trust (the "Golden Hills DOT") against the Property to secure a $275,000 debt. (*Id.* ¶ 9). Defendant JP Morgan Chase Bank, N.A. ("JPMorgan") was later substituted as trustee under the WaMu DOT and reconveyed the WaMu DOT based upon satisfaction of the underlying debt. (*Id.* ¶ 11). In other words, it appears that the Golden Hills DOT represented a refinancing of the

Property. Golden Hills Group later assigned the Golden Hills DOT and its beneficial interest thereunder to Defendant CJT Financial ("CJT"). Two weeks later, Plaintiffs Matthew and Maria Curitti entered into a land sales contract (the "Contract") to purchase the Property. (*Id.* ¶ 14). CJT approved the sale for $76,000 to satisfy the Golden Hills DOT. (*Id.* ¶ 16). This appears to represent CJT's approval of a short sale from the Petersons to the Curittis. The Property was conveyed by deed as contemplated in the Contract on September 1, 2011, with the Curittis giving USAA Federal Savings Bank ("USAA") a $66,000 promissory note and deed of trust securing it (and presumably making a $10,000 down payment). (*See id.* ¶¶ 17, 20). However, CJT failed to reconvey the WaMu DOT following its receipt of the proceeds from the closing, as anticipated. (*Id.* ¶ 19). On or about December 8, 2011, Old Republic National Title Insurance Co. ("Old Republic"), the Curittis' title insurer, informed the Curittis that the substitution and reconveyance of the WaMu DOT may have been fraudulent. (*Id.* ¶ 22). Old Republic has offered to pay JPMorgan the fair market value of $85,000 (the Curittis' title insurance policy limits) to properly reconvey the WaMu DOT. (*See id.* ¶¶ 23–24). JPMorgan has not responded. (*Id.* ¶ 25).

      Plaintiffs sued JPMorgan and CJT in the Third Judicial District Court to quiet title to the Property. JPMorgan removed, answered, and counterclaimed for declaratory relief that the Reconveyance was null and void and that the DOT still encumbered the Property. The Clerk has entered default against CJT. Plaintiffs now ask the Court for a default judgment against CJT.

## II.     LEGAL STANDARDS

      Obtaining default judgment is a two-step process under Rule 55. *Eitel v. McCool*, 782 F.2d 1470, 1471 (9th Cir. 1986). First, the clerk must enter the party's default. Fed. R. Civ. P. 55(a). The party seeking default judgment must then petition the court for a default judgment. *Id.* at 55(b)(2). "A grant or denial of a motion for the entry of default judgment is within the discretion of the court." *Lau Ah Yew v. Dulles*, 236 F.2d 415, 416 (9th Cir. 1956). A court may, "for good cause shown," set aside an entry of default. *See McMillen v. J.C. Penney Co.*, 205

F.R.D. 557, 558 (D. Nev. 2002). Default judgments are generally disfavored, so courts should attempt to resolve motions for default judgment to encourage a decision on the merits. *See id.* (citing *TCI Grp. Life Ins. Plan v. Knoebber*, 244 F.3d 691, 696 (9th Cir. 2001)). In order for a court to determine whether to "exercise its discretion to enter a default [judgment]," the court should consider seven factors:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of the plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Id.* (citing *Eitel*, 782 F.2d at 1471–72).

## III.   ANALYSIS

Plaintiff's claim appears meritorious, and the Complaint is sufficient. The sum of money at stake is unlikely to meaningfully harm a lending institution such as CJT as compared to the prejudice that may be suffered by Plaintiffs if the case cannot be adjudicated due to the former's unexcused failure to defend. There is little possibility of any dispute of material facts as between Plaintiffs and CJT. CJT in fact does not appear to be materially adverse to Plaintiffs. Plaintiffs obtained the Property by paying their predecessors' debt to CJT.

It is a previous lender, JPMorgan, who appears to claim it was defrauded. It is unlikely, however, that JPMorgan can show that the Curittis were aware of any such fraud such that they are not bona fide purchasers. JPMorgan alleges in its Counterclaim against Plaintiffs that JPMorgan obtained the WaMu note and DOT by operation of law when it purchased WaMu's assets sometime after the FDIC put WaMu into receivership in 2008, and that some unknown person(s) filed the substitution and reconveyance of the WaMu note and deed of trust. (*See* Answer & Countercl. 8, Oct. 31, 2012, ECF No. 19). It is indeed unorthodox that a lender like WaMu would substitute itself as trustee for the purpose of reconveyance. This is an administrative task that lenders typically leave to title or reconveyance companies with which

they have longstanding relationships.  But it is likely that JPMorgan would not be able to establish an equitable lien in this case and would be limited to its legal remedies against the alleged fraudster(s) who apparently absconded with the proceeds of the Petersons' refinancing with Golden Hills and then purported to convey the then-JPMorgan-owned WaMu DOT in order to cover their tracks, at least temporarily.  It is possible JPMorgan could show that the Curittis themselves were involved in the alleged fraud, in which case an equitable lien would be appropriate, but there is nothing to indicate that.  In any case, Plaintiffs and JPMorgan have recently stipulated to dismiss their respective claims against one another.

The Court will enter a default judgment, but against CJT only.  The quiet title action is an *in rem* action.  The Court cannot enter an *in rem* default judgment if fewer than all interested parties have defaulted.  However, the Court can enter a *quasi in rem* default judgment as against the defaulted party.

## CONCLUSION

IT IS HEREBY ORDERED that the Motion for Default Judgment (ECF No. 96) is GRANTED.

The Court hereby DECLARES that CJT Financial Group has no interest in the Property at 1711 Branding Ct., Fernley, NV 89406 superior to, or otherwise encumbering any interest of, Matthew Curitti or Maria Curitti.  The Court does not purport via this Order to adjudicate the rights of any other party in the Property as against any other party.

IT IS SO ORDERED.

Dated this 16th day of September, 2013.

_____
ROBERT C. JONES
United States District Judge